**JUDGE BUCHWALD**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

CAPITAL BEVERAGE CORPORATION,

           Plaintiff,

v.

OAK BEVERAGES, INC.; VICTORIA
BEVERAGE, INC.; and DEALY &
SILBERSTEIN, LLP (solely in its capacity as
Escrow Agent),

           Defendants.

---------------------------------------------------------------- x

**'07 CIV 6063**

**COMPLAINT FOR
DECLARATORY
JUDGMENT**



Plaintiff Capital Beverage Corp. ("Capital"), by and through its undersigned attorneys, Brown Rudnick Berlack Israels LLP, for its Complaint for Declaratory Judgment against Oak Beverages, Inc. ("Oak"), Victoria Beverage, Inc. ("Victoria") (collectively the "Defendants"), and Dealy & Silberstein, LLP (the "Escrow Agent"), respectfully alleges as follows:

### NATURE OF THE ACTION

1.     Capital seeks a declaration under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), that, under the parties' Asset Purchase Agreement (the "APA") dated September 15, 2005 and Escrow Agreement dated December 16, 2005, Capital is not required to indemnify Defendants for unemployment insurance contributions (the "Unemployment Taxes") based on the experience rating account held by Oak and maintained by the State of New York Department of Labor (the "DOL"). As of May 31, 2007, according to the DOL, the unpaid balance on Oak's account totaled approximately $90,000 (excluding interest accrued as of May 31, 2007). Defendants assert that Capital

is liable to them in the amount of $500,000 in present and future damages related to these Unemployment Taxes. In addition, Capital seeks a declaration that, under the APA, Defendants are required to indemnify Capital for any damages, including attorneys' fees and expenses, that Capital will sustain as a result of Defendants' breach of the APA. Finally, Capital seeks a judgment directing the Escrow Agent (1) to return to Capital all assets remaining in the Escrow account that are not otherwise allocated to other claims and (2) not to disburse funds from the Escrow account to pay for any Unemployment Taxes and related costs and expenses claimed by Defendants or to pay for any costs incurred by Defendants in indemnifying Capital for its damages.

2.    The parties' dispute arises over the interpretation of required indemnifications under section 7 of the APA. Under the Agreement, the parties deposited in escrow a designated amount of funds intended to satisfy certain claims.

3.    Section 3(a) of the Escrow Agreement allows the Purchaser to give a written Claim Notice to the Escrow Agent and the Seller specifying the nature and dollar amount of any direct claim that the Purchaser has against the Seller under the APA or transactions contemplated thereunder. The Seller has ten days in which to submit a Counter Notice disputing any such claim made by the Purchaser. Section 3(a) also provides that the Escrow Agent shall not disburse the disputed funds until the Escrow Agent receives a final, non-appealable court order or a written agreement signed by the parties directing the Escrow Agent to disburse the funds accordingly. In addition, section 3(b) of the Escrow Agreement permits the Purchaser to submit an Instruction Notice to the Escrow Agent and the Seller instructing the Escrow Agent to reimburse the Purchaser for damages incurred as a result of third-party claims.

4.     On June 14, 2007, just two days before the remaining funds in the Escrow account were due to be released, Defendants submitted an Amended Claim Notice to Capital and the Escrow Agent claiming $500,000 (principal and expected future interest combined) worth of Unemployment Taxes that Oak owes to the DOL once the DOL transferred Capital's experience ratings for unemployment insurance purposes to Oak after Defendants purchased Capital's assets.  Defendants also submitted on the same day an Instruction Notice to Capital demanding payment for the following damages:  (1) $89,719.36 in Unemployment Taxes presently owing on Oak's accounts, and (2) $10,933.75 in attorneys' fees that Defendants had accrued thus far.

5.     On June 22, 2007, Capital timely submitted a Counter Notice to the Escrow Agent and Defendants disputing both their invalid indemnification claim for the unpaid Unemployment Taxes and premature demand for payment of damages.  Capital's Counter Notice stated that, under the terms of the APA, it is not liable for the increased Unemployment Taxes assessed to Oak post-closing (1) as a result of Defendants' voluntary decision to employ Capital personnel, thereby increasing the experiences subject to unemployment insurance contributions, and (2) as a natural consequence of their increase in assets.  In their claim for the unpaid taxes, Defendants are attempting to convert an expense incurred in the ordinary course of business into an indemnifiable claim under the APA.

6.     Furthermore, Capital is not liable to Defendants for any breach of a warranty or misrepresentation under the APA.  Capital correctly reported to Defendants at closing that all taxes and accruals, including taxes assessed for unemployment insurance, had been properly paid.  Any additional contributions that Oak presently owes

to the DOL are taxes assessed because of Defendants' increased asset value and decision to hire former Capital personnel, not because Capital owed those taxes to the DOL at the time of closing.

7.      Finally, Capital advised that Defendants' Instruction Notice was invalid and premature under section 3(b) of the Escrow Agreement which permits the Purchaser to request reimbursement of damages for third-party claims from the Escrow Agent. The DOL has presently suspended any collection activity for the unpaid balances on Oak's experience rating account until the DOL has arranged a conference and hearing to resolve the DOL's request for additional Unemployment Taxes. Upon information and belief, Oak has yet to pay any of these funds to the DOL. Its claim for "reimbursement" is therefore premature. Furthermore, Capital is not responsible for the payment of Unemployment Taxes and associated legal fees on a claim that is inappropriate under the parties' Asset Purchase and Escrow Agreements.

8.      In light of the foregoing, Capital requests a declaratory judgment that Capital is not required to indemnify Defendants for additional Unemployment Taxes and related costs and damages, including attorneys' fees and expenses. Capital also requests a declaratory judgment that Defendants must indemnify Capital for damages that it will incur as a result of Defendants' breach of their obligations under the APA. Finally, Capital requests a declaratory judgment that directs the Escrow Agent (1) to return to Capital all remaining funds in the Escrow account that are not otherwise allocated to other claims, and (2) not to disburse funds from the Escrow account to pay for any Unemployment Taxes and related costs and expenses claimed by Defendants or to pay for any costs incurred by Defendants in indemnifying Capital for its damages.

## PARTIES

9.     Plaintiff Capital is a Delaware corporation with its principal corporate offices at 120 Rio Vista Drive, Norwood, New Jersey 07648.

10.     Defendant Victoria is a New York corporation with its principal corporate offices at One Flower Lane, Blauvelt, New York 10913.  Victoria is, upon information and belief, the wholly-owned subsidiary of Oak and, for purposes of the Asset Purchase and Escrow Agreements, is Oak's assignee pursuant to section 16(j) of the APA.

11.     Defendant Oak is a New York corporation with its principal corporate offices at One Flower Lane, Blauvelt, New York 10913.

12.     Nominal Defendant Dealy & Silberstein, LLP maintains its offices at 225 Broadway, Suite 1405, New York, New York 10007.  Defendant Dealy & Silberstein, LLP is the Escrow Agent for the parties and is a nominal Defendant only.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332(a).  The amount at issue exceeds $75,000, "exclusive of interest and costs," and the parties are "[c]itizens of different states."

14.     This Court may exercise personal jurisdiction over Defendants and the Escrow Agent as they are all entities that maintain their principal offices in and transact significant business in the State of New York.  Furthermore, pursuant to section 16(g) of the APA and section 13 of the Escrow Agreement, the parties jointly consented to the

jurisdiction of courts within the State of New York, including federal court where subject matter jurisdiction is proper. Section 16(g) of the APA and section 18 of the Escrow Agreement also contain a choice-of-law provision providing that the laws of the State of New York govern both agreements regardless of New York conflicts of law principles.

15.    Venue is proper in this judicial district under 28 U.S.C. § 1391(a)(1) as all Defendants reside in the State of New York.

## FACTS RELEVANT TO ALL CLAIMS

16.    On September 15, 2005, Capital and Defendants entered into the APA under which Capital agreed to sell to Defendants its exclusive distribution rights, proprietary rights, on-premises and off-premises customer lists, and all point-of-sale materials (the "Capital Acquired Assets") related to Capital's wholesale distribution business for certain alcoholic beverage products.

17.    Under section 5(m) of the APA, Capital made certain representations and warranties under which, *inter alia*, it verified to Defendants that, as of the closing date, all federal, state, local, and foreign tax returns and reports had been properly filed and all such taxes and accruals, including taxes for unemployment insurance contributions, had been properly paid.

18.    In addition, under section 7 of the same Agreement, each party indemnified the other against breach of the Purchaser's or Seller's breach of any of its obligations under the Agreement. Specifically, under section 7(a), Defendants agreed to indemnify Capital for any damages, including attorneys' fees and expenses, incurred by

or awarded against Capital resulting from, *inter alia*, "Purchaser's breach of any agreement, covenant, term, condition or provisions contained [in the Agreement] or Purchaser's failure to perform any agreements, covenant, term, condition or provision on its part to be performed."

19.     Under section 7(b), Capital agreed to indemnify Defendants for damages incurred by or awarded against Defendants resulting from, *inter alia*, (1) "any Liabilities or obligations of Seller including, without limitation, the Seller Retained Liabilities," (2) "Seller's breach of any agreement, covenant, term, condition or provision contained [in the Agreement] or Seller's failure to perform any agreement, covenant, term, condition or provision on its part to be performed hereunder," or (3) "Seller's misrepresentation or breach of any representation or warranty made by Seller hereunder as if such representation or warranty were made both on the date hereof and as of the Closing Date, or any misstatement or omission in any certificate, schedule, application, exhibit, . . . or any other document delivered or caused to be delivered by Seller . . . ."

20.     Sections 1(jj) and 3(c) of the APA define, respectively, the terms "Liabilities" and "Seller Retained Liabilities." The term "Liabilities" includes, "without limitation, any direct or indirect indebtedness, guaranty, endorsement, claim, loss, damage, deficiency, cost, expense, obligation or responsibility, fixed or contingent, accrued or unaccrued, known or unknown, choate or inchoate, asserted or unasserted, conditional or unconditional, matured or unmatured, liquidated [or] unliquidated, secured or unsecured, secondary or other."

21.    The term "Seller Retained Liabilities" is defined to include, *inter alia*, "any Liability or obligation of the Seller arising under this Agreement"; "any Liability or obligation for . . . any Taxes arising as a result of Seller's operation of the Distribution Business or ownership of the Capital Acquired Assets before the Closing Date, [and] . . . any Taxes that will arise as a result of the sale of the Capital Acquired Assets . . ."; "any Liability or obligation arising out of any existing action . . . (whether civil, criminal, administrative, investigative, or informal) commenced . . . before, or otherwise involving, any Governmental Authority or arbitrator . . ."; "any Liability or obligation based upon acts or omissions of Seller occurring after the Closing Date"; and "any other Liability or obligation of Seller, including any Liability or obligation directly or indirectly arising out of or relating to the operation of the Distribution Business or ownership of the Capital Acquired Assets prior to the Closing Date . . . ."

22.    On December 16, 2005, Capital, Victoria, as Oak's assignee, and the Escrow Agent entered into an Escrow Agreement related to the APA under which Purchaser agreed to deposit approximately $2.83 million into the Escrow account in order to cover primary and secondary creditor claims arising under the APA.

23.    As explained above, under section 3(a) of the Escrow Agreement, "Purchaser may give written notice (a 'Claim Notice') to the Escrow Agent and the Seller specifying in reasonable detail the nature and dollar amount of any direct claim made by Purchaser against Seller (a 'Claim'), which it may have under the Purchase Agreement, that certain sub-distribution agreement between Seller and Purchaser (the 'Sub-Distribution Agreement') or the transactions contemplated by either of those agreements."    Seller is then permitted to give "written notice to Purchaser and Escrow

Agent disputing any Claim (a 'Counter Notice') within 10 days following receipt by Escrow Agent and the Seller of the Claim Notice regarding such Claim . . . ." If the Counter Notice is timely filed, "Escrow Agent shall be entitled to retain the Escrow Property until Escrow Agent shall have received (i) a final non-appealable order of a court of competent jurisdiction directing delivery of the Escrow Property . . . , or (ii) a written agreement executed by Purchaser and Seller directing delivery of the Escrow Property, in which event Escrow Agent shall disburse the Escrow Property in accordance with such order or agreement."

24.     In addition, under section 3(b) of the Escrow Agreement, "Purchaser may provide Escrow Agent with a written instruction (an 'Instruction Notice') to reimburse Purchaser for Damages as they are incurred by Purchaser" on account of third-party claims. "Within ten (10) days following receipt by Escrow Agent of the Instruction Notice, the Escrow Agent will promptly pay Purchaser the dollar amount specified in such notice from the Escrow Property."

25.     Upon information and belief, on March 22, 2007, the DOL notified Oak that it had combined the employment and unemployment experiences of Capital and Oak for experience rating purposes as a result of Defendants' acquisition of Capital's assets. Upon information and belief, the experience ratings allow the DOL to assess the unemployment insurance contributions due from eligible employers. Upon information and belief, as a result of the experience ratings transfer, the tax rate for the unemployment insurance contributions increased, and Oak's account now owed a deficit.

26.     When Capital sold its distribution assets to Defendants, they voluntarily decided to hire employees from Capital's former distribution network though no provision was specifically made for their employment under the APA.

27.     On April 4, 2007, Defendants submitted a Claim Notice to the Escrow Agent and Capital informing Capital of the DOL's actions and of Defendants' intention to contest the transfer of experiences and to seek indemnification from Capital for the additional Unemployment Taxes Oak owes to the DOL.  Defendants' initial Claim Notice failed to specify the nature and dollar amount of the claim as required under section 3(a) of the Escrow Agreement.

28.     Capital timely filed a Counter Notice on April 12, 2007 disputing Defendants' indemnification claim and advising them of the defective nature of their Claim Notice.  The Counter Notice stated that Capital had not breached any of its obligations or representations under the APA and had never agreed to indemnify Defendants for Unemployment Taxes that arose post-closing.

29.     On May 25, 2007, Defendants submitted a so-called "rebuttal" notice clarifying the provisions of the Asset Purchase and Escrow Agreements under which they asserted indemnification for the unpaid Unemployment Taxes.  Specifically, Defendants notified Capital that under section 7(b)(i) of the APA, Capital had agreed to indemnify Defendants for "any Liabilities or obligations of Seller including, without limitation, the Seller Retained Liabilities."  Defendants further enumerated section 1(jj) and certain subparts of section 3(c) of the APA (*see supra* paras. 20-21 of this Complaint), under which the parties defined the terms "Liabilities" and "Seller Retained Liabilities," in

asserting that Capital was responsible for the unpaid taxes under these "broadly" defined terms. No response by Capital to Defendants' "rebuttal" notice was required under the Escrow Agreement.

30.    At the same time, the DOL sent Defendants correspondence regarding the Unemployment Taxes that Oak presently owes. Specifically, the DOL sent a letter to Defendants on May 24, 2007, notifying them that the DOL would "temporarily withhold collection activity for any additional contributions" due on Oak's experience rating accounts. The DOL also notified Defendants that it would schedule a conference with a representative from the DOL's Tax Services Office to discuss the DOL auditor's findings and that it had received the Defendants' request for a hearing on the matter. To date, upon information and belief, neither the conference nor the hearing has been scheduled. The DOL also sent Defendants a series of notices on May 31, 2007 notifying them, *inter alia*, of the unpaid balance due on Oak's experience rating account and also of the applicable tax rates assessed to Oak's account.

31.    Subsequently, on June 14, 2007, Defendants submitted an Amended Claim Notice in which they asserted a claim for $500,000 to cover future Unemployment Taxes and related costs and expenses, including attorneys' fees, and also reiterated their claim for indemnification by Capital for the unpaid balance of these taxes. Defendants also submitted on June 14 an Instruction Notice to the Escrow Agent and Capital demanding payment for the following damages: (1) $89,719.36 in Unemployment Taxes presently owing on Oak's account, and (2) $10,933.75 in attorneys' fees that Defendants accrued thus far.

32.     On June 22, 2007, Capital timely submitted a Counter Notice to the Escrow Agent and Defendants, disputing both Defendants' invalid indemnification claim for the unpaid taxes and premature demand for payment of damages. Capital asserted that, under the terms of the APA, it is not liable for increased unemployment insurance contributions assessed by the DOL to Oak post-closing and has not breached any of its obligations or warranties under the APA. Capital further asserted that, since the DOL has suspended collection activity for the unpaid taxes and Defendants have yet to pay any of these funds, Defendants' claim for "reimbursement" under the Instruction Notice is premature.

## FIRST CLAIM FOR RELIEF

(Declaratory Judgment As Regards Indemnification By Capital
Of Unpaid Unemployment Taxes Owed By Defendants)

33.     Capital incorporates by reference the allegations contained in paragraphs 1-32 of this Complaint as if fully set forth herein.

34.     Under section 7(b) of the APA, Capital agreed to indemnify Defendants only for certain liabilities and obligations that arose under the Agreement. The Unemployment Taxes, however, for which Defendants are now seeking indemnification are liabilities that arose post-closing and are therefore owed by Defendants only, and not by Capital. The taxes were assessed by the DOL post-closing as a result of Defendants' (1) increased personnel responsibilities, when Defendants chose to hire certain of Capital's former employees, and (2) increased asset value.

35.    Capital presents an "actual controversy" pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a).  In their Amended Claim and Instruction Notices dated June 14, 2007, Defendants have demanded payment for present and future damages resulting from the unpaid Unemployment Taxes in an amount in excess of $500,000. Capital timely responded on June 22, 2007 with a Counter Notice disputing Defendants' demand.  Consequently, Capital now seeks a declaratory judgment from the Court to resolve Capital's alleged liability for the Unemployment Taxes and related costs and expenses under the APA.

36.    Based on the foregoing, under 28 U.S.C. § 2201(a), Capital is entitled to a judgment, pursuant to the terms of the Asset Purchase and Escrow Agreements: declaring that (1) Capital is not required to indemnify Defendants for the unpaid Unemployment Taxes or for any costs, expenses, or damages related thereto, including but not limited to attorneys' fees; and (2) Defendants bear the responsibility for these unpaid taxes and related costs, expenses, and damages; and directing the Escrow Agent (3) to return to Capital all property or assets currently remaining in the Escrow account that are not otherwise allocated for other claims; and (4) not to disburse funds from the Escrow account for the purposes of paying for any Unemployment Taxes and related costs and expenses currently assessed by and owed to the DOL by Defendants.

## SECOND CLAIM FOR RELIEF

(Declaratory Judgment As Regards Indemnification By
Defendants Of Damages Incurred By Capital)

37.    Capital incorporates by reference the allegations contained in paragraphs 1-36 of this Complaint as if fully set forth herein.

38.     Under section 7(a) of the APA, Defendants agreed to indemnify Capital for certain liabilities and obligations that arose under the Agreement, including their "breach of" or "failure to perform" any agreement, covenant, or term under the APA.

39.     By demanding that Capital indemnify Defendants for unpaid Unemployment Taxes for which Capital is not responsible and for a claim they know is frivolous, Defendants have breached their obligations under the APA and therefore owe Capital for damages incurred by Capital in its defense of their meritless indemnification claim, including but not limited to reasonable attorneys' fees and expenses.

40.     Capital presents an "actual controversy" pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a).  In their Amended Claim and Instruction Notices dated June 14, 2007, Defendants have demanded payment for present and future damages resulting from the unpaid Unemployment Taxes in an amount in excess of $500,000. Capital timely responded on June 22, 2007 with a Counter Notice disputing Defendants' demand.  Consequently, Capital now seeks a declaratory judgment from the Court to resolve Capital's alleged liability for the Unemployment Taxes and related costs and expenses under the APA.

41.     Based on the foregoing, under 28 U.S.C. § 2201(a), Capital is entitled to a judgment, pursuant to the terms of the Asset Purchase and Escrow Agreements:  (1) declaring that Defendants are required to indemnify Capital for any and all damages sustained by Capital in its defense of Defendants' claim for unpaid Unemployment Taxes and related costs and expenses, including but not limited to attorneys' fees; and (2) directing the Escrow Agent not to disburse any funds from the Escrow account for the

purposes of covering any costs or expenses incurred by Defendants in indemnifying Capital for any damages Capital incurred in its defense.

WHEREFORE, under 28 U.S.C. § 2201(a), Capital respectfully requests declaratory judgment of this Court awarding Capital:

(1)     on its Claims for Relief, a judgment declaring that (a) Capital is not required to indemnify Defendants for the unpaid Unemployment Taxes or for any costs, expenses, or damages related thereto, including but not limited to attorneys' fees; (b) Defendants bear the responsibility for these unpaid taxes and related costs, expenses, and damages; and (c) Defendants are required to indemnify Capital for any and all damages sustained by Capital in its defense of Defendants' claim for unpaid Unemployment Taxes and related costs and expenses, including but not limited to attorneys' fees;

(2)     on its Claims for Relief, a judgment directing the Escrow Agent (a) to return to Capital all property or assets currently remaining in the Escrow account that are not otherwise allocated for other claims; and (b) not to disburse funds from the Escrow account for the purposes of (i) paying for any Unemployment Taxes and related costs and expenses currently assessed by and owed to the DOL by Defendants, or (ii) covering any costs or expenses incurred by Defendants in indemnifying Capital for any damages Capital incurred in its defense;

(3)     its reasonable attorneys' fees and costs in bringing this action, to the extent that Capital does not recover such fees and costs through declaratory relief; and

(4)     such other and further relief as this Court deems just and proper.

Dated: New York, New York
       June 26, 2007

BROWN RUDNICK BERLACK ISRAELS LLP


By:   _____
      Martin S. Siegel (MSS 9490)

      Seven Times Square
      New York, New York  10036
      Telephone:  (212) 209-4800
      Facsimile:  (212) 209-4801

      *Attorneys for Plaintiff*
      *Capital Beverage Corporation*

# 8163348 v2

- 16 -